May it please the Court, Albert Chow on behalf of the petitioners. Your Honors, this is an asylum case wherein the facts are not in dispute. There are three issues in this case. The first is whether the petitioners qualify for an exception to the one-year filing deadline for an asylum case. The second is whether or not the petitioners have suffered any past persecution. And the third is whether the petitioners fall within a disfavored group analysis wherein they may get asylum or withholding approval. In regards to the one-year deadline, there was a case that was decided after the Board made its decision in this case. It's called Veri Diana v. Holder, and that was decided in 2011 by the Ninth Circuit. And in that case, the Ninth Circuit said that immigration consultant fraud does fall within the extraordinary circumstances exception for the one-year filing deadline. But isn't that distinguishable? Aren't the facts of yours distinguishable because the petitioner in Veri Diana was more diligent in pursuing the claims than your clients? Well, Your Honor, in our particular case, the male petitioner is the one who went and found this association to help him file an asylum application. And again, the facts are not in dispute that he found them in June of 2002, which was within one year of his entry into the United States. And so had they filed an asylum application as they said they would, he would have been within the one year. And thereafter, he did not just hire them and then do nothing. He did follow up on his case. He was diligent. And every time they asked him, well, we can speed it up if you pay us more money. And, of course, he felt that at that time that he was being defrauded, and so he did not proceed with this association. So are the – but he still – so it's – if we consider Mr. Seymour's application to be filed as of March 13, 2003, what extraordinary circumstances existed justifying his filing past the one-year deadline? Well, I think the extraordinary circumstance here, again, is essentially fraud by a person who claimed that they could file asylum for him. And that's what the Court said in Veri Diana, that immigration consultant fraud is one of – although it's not enumerated, it does fall within extraordinary circumstances. But we don't know whether they were fraudulent or not. I mean, he – it's not like he paid them the money and then they didn't file. I mean, he didn't live up to his sense of bargain, and they didn't do the work. So I'm not sure – I mean, sort of like going to a lawyer and then saying, I'm not going to pay the fee, and then the lawyer doesn't do the work. Yes, Your Honor. Well, again, you know, he was found credible in his testimony. And in his testimony, he stated that he found this association who said they would file an application for him. He paid them $900 to do so. And when they did not, and he – every time he called them, he says, what's going on with my application? Then they say, well, he's – He promised to pay $5,000, right? I'm sorry? He promised to pay $5,000. That was – I think that was later. In other words, after he paid the initial $900, then they said, well, wait a minute. If you want us to speed up the case, then you have to pay $5,000. And that's when he felt this is not what we agreed to beforehand. It's true that there perhaps should be more fact-finding in this area, but in terms of what is in the record, and again, he's found to be credible in this matter, I do believe that this falls under fraud. Well, he may be credible, but he could be wrong. I mean, you know, it's up to him to show that a – he has a burden of showing reasons. I mean, it sounds to me like he hired this organization. He didn't – there's no proof that they defrauded him. I mean, he may believe he was defrauded. They said, look, if you want to find it in time, we can give us more money. He decides not to do it. So I'm not sure – I'm not sure sort of a change of heart like that qualifies extraordinary circumstances. You have – both the IJ and the Board found no extraordinary circumstances. Isn't that entitled to substantial deference? Yes, Your Honor, and what I'm saying is this Court in Very Diana was decided after this case was decided. And I believe that, you know, in that case, the judge and the BIA both said, hey, wait a minute, these people, they're not attorneys, so they don't fall within the exception. And Very Diana said, wait a minute, no, they don't have to be attorneys. This falls within the exception if you hold yourself out. Nevertheless, there have to be extraordinary circumstances. Nevertheless, there have to be extraordinary circumstances. Yes, and what our argument is, when you're defrauded or at least you hire a person to do – if they do not, then this falls within an extraordinary – this is an extraordinary circumstance. It compels a conclusion that this is an extraordinary circumstance case? I believe so. It certainly shows his intent to file for asylum within the one-year deadline. It certainly shows that. And then nothing happened, essentially. And then once he found an attorney, then the application was filed. And that's why we believe that – Let me just refresh my recollection. Is there anything in the record other than his testimony about this? No, Your Honors. And I believe that – that's why I believe this case may be proper for a remand for more fact-finding, because at the time, essentially the judge just said, wait a minute, we're not talking about an attorney here, so this kind of doesn't – you know, your argument is useless. So they didn't ask for more physical evidence or documentary evidence to prove this, because at the time, Very Diana had not yet been decided. The judge has simply said this doesn't fall within the exception. So this applies to the husband? Yes. Husband and wife, right? Right. And it doesn't apply to the wife. She would then be what, a derivative? How would – Assuming that if he – if this were to be found an extraordinary circumstance and therefore he – his application would be found to be within an exception, then she could theoretically be a derivative on his asylum application, because he would then be eligible for asylum and not just withholding a removal, which does not carry a derivative statute. You went by – that got by me awfully quickly. Was that an argument raised before the Board, the one you just made? Was that exhausted? That was – it was not raised before the Board in that sense. So why – it wasn't raised before the Board at all, so how do we have jurisdiction over something that wasn't exhausted? Well, what I'm saying is, is that what was raised was the fact that the male Petitioner does qualify for an exception, and what I'm saying is if it is found that he does qualify, then she would then be eligible for being a derivative on his application regardless. But you didn't raise the argument that Mr. Siamor's application should be considered filed for the purposes of reasonable delay, the analysis on the date of Ms. C's application. You didn't raise that before the BIA, did you? That was not raised before the BIA. Correct. That's what I was getting at. Right. That's true. That is true. Well, is your position that it didn't need to be raised? Because if he prevails here, it would go back, and then she would apply for derivative status? No, Your Honors. My argument is that the very dynamic case was decided after the Board made its decision. And so after the Board made its decision and said immigration consultant fraud is one, is an exception, is an extraordinary circumstance, then that's when we made the argument, Your Honors, here in the Ninth Circuit. But at the time of the BIA, this case was not decided, and so I believe that that argument was not raised simply because there was no precedent for raising that particular argument. Well, did the – in his testimony, did he ever say that they promised to pursue asylum?  That was the word that they used? He said that he had hired this association to file an asylum application for him and that he had paid $900 to do so. And so what we believe is that this is, again, does fall within the one-year deadline exception. Okay. You have about two minutes left. Do you want to say it? Just very quickly, Your Honors. Also, there's another case that was decided after this case, Tampa Bulan, which talks about Christians being a disfavored group in Indonesia. And again, we believe that both – again, credible testimony, both petitioners are Catholic, therefore, they fall within this Tampa Bulan case where they should be considered to be a disfavored group and have a low threshold for individualized risk to get asylum or withhold. Is that case in your belief? It is. Okay. And I'll reserve the rest of my time. Just going back for one second, I thought that the testimony was that this group had promised to get, quote, legal status, not – they didn't – the word asylum was not used. It was just legal status. The word legal status was also used, Your Honor. I also believe that he did say that he had hired them to file an asylum application for him. Where was that in the record? I know the legal status is at A219. The legal status portion. Page 215. 215. If you see on the top, there's a question, and then what happened is I applied through CIAS for the asylum. Okay. Okay. We'll hear from the government. Thank you. May it please the Court. My name is Dawn Conrad, and I'm here today on behalf of the United States Attorney General. In this case, the Board properly found the petitioners were ineligible for asylum because they filed their asylum applications more than one year after their entry into this country, and they failed to demonstrate extraordinary circumstances. If they approached the immigration organization, CIAS, for assistance with asylum in June 2002, as Mr. Simomora testified, that was still 15 months after Ms. C's lawful status expired. She was already well outside her time for filing the application, and she did not file her asylum application until March 2003. And Mr. Simomora did not file his asylum application until February 2006. This case does not present a similar factual scenario as this Court's decision in Veritiana. In that case, the petitioner paid a non-attorney representative to extend her non-immigration status and file an asylum application within four months of her arrival in the U.S. There was evidence that she diligently pursued her asylum application with the immigration institution. So there was four months, and in his case, it's 10 months. That's correct. If he was the one to file the asylum application, but it was Ms. C that governs, because she's the one that filed the application in March 2003. I'm sorry, why doesn't, why doesn't, I mean, he goes to the, we're trying to see similarities with Veritiana, right? Correct. Okay. So in Veritiana, he goes and talks to the fraudulent preparer four months afterwards, or the petitioner there does. Correct. And here it was 10 months. For Mr. Simomora, but not for Ms. C. And it's her date that governs, because she's the applicant that filed for asylum in 2003. He did not file until 2006. But his claim is, I would have filed then, but for the fraud. So isn't that, why isn't, isn't his application that's managed? Well, then. For purposes of applying. Well, we also, it's not similar to Veritiana, because. There may be other differences, but I want to talk about this difference of similarity, okay? So let's not go on to something else. Okay. So four months there, Veritiana, 10 months here, right? Correct. All the other stuff you just told me is totally irrelevant. I mean, it may matter for other purposes, but this is, both of these were within a one-year window. That they consulted with the immigration consultant, correct. Okay. And all the stuff you were saying about her, none of that matters, right? It's just sand you're throwing up. No, because it's her date that controls when her asylum application is finally filed. Well, we're talking about him now. Okay. We're talking about him. Veritiana, there was no application filed within the one-year period, but they went to a consultant, right? Within the one-year period. Correct. And we held that that was, might be extraordinary circumstances, right? Correct. Here he went to a consultant within the one-year period, and he's claiming fraud. Okay. All fours, right? There's no difference. The fact that she also has an application doesn't matter, right? Well, in Veritiana, they also just filed for asylum four months after her one-year period expired. He did not file asylum until 2006. I understand. We can talk about those other differences, but for purposes of this, they are identical. For that. Except it's one is four months and one is ten months. The fact that she has an application doesn't matter, right, for purposes of this argument, right? That's correct. Okay. So I don't know why you keep raising it, and I don't know why it's now taken us a better part of five minutes to establish this one fact. Okay, Your Honor. Are we on the same page now? We are. Okay. So why isn't – I mean, assuming we accept his view of the matter, and why isn't this Veritiana all over again? Because what we don't have is evidence that he diligently pursued his application with the immigration consultant, like we did in – like this Court did in Veritiana, and also when his relationship ended. Counsel, I seem to recall he did call him and harass him and ask him what's going on. We don't have any evidence about the timeline, when that occurred, whether he completed the payment, any kind of information. In Veritiana, it was much more detailed. She contacted them six times over a six-month period. She had evidence that she made this payment to them. We had much more evidence that she diligently pursued it, and then she quickly filed for asylum as soon as that relationship ended. What we don't have in this case is any evidence of that. Well, should we reamend it? I mean, since Veritiana was not the law at the time, maybe he didn't know what evidence to put in. Isn't this a good argument for sending it back and giving them a chance to present this evidence if it exists? No, Your Honor, because in this case, we have two dates that are well outside the filing period. For both her – she filed three years after she entered, and he filed six years after. Well, now the argument, though, that they are making to prevail is that Mr. Ciamora's asylum application, he wants it to be considered filed as of March 13, 2003, and for the purposes of reasonable delay. And then C then uses – then she's derivative from that, correct? And that argument wasn't made before the BIA, right? That's correct. So, I mean, is that the only way – that's the way that he – that's the way it has to come down for them to prevail, right? Yes, Your Honor. That argument was not raised below. And it's also – there is no evidence in this case. I'm sorry. Which argument? Which argument? That he can base his application filing deadline on her application filing deadline. That he actually filed – basically that their application filing deadline was the same, March 13, 2003. That's the argument he's raising before this Court for the first time. But he did not exhaust that argument below. And the statute says it's the date of the applicant's entry that controls, not the date of the – any derivatives applicant that controls. Actually, he's wanting to use her entry date. He's wanting to use her. But that's not necessary to his argument, right? Yes, it is. Because otherwise there's no explanation for that four-year period of why he didn't file for asylum. Why he didn't ultimately. Correct. I guess his argument is he relied on her. Correct. Okay. So it's the principal applicant's timeline that matters. You cannot use his date of entry on her application. And also it's his burden to prove timeliness and extraordinary circumstances. The board also correctly found that substantial evidence that petitioners failed to meet their burden of proof for withholding a removal and protection under the Convention Against Torture. And properly found that they applied to disfavored group analysis and found that petitioners presented a relatively weak claim of disfavored status, a lack of evidence that the government approved of the discrimination, and a minimal showing of individualized risk. Okay. Thank you. Thank you. You have about two minutes left. We're on minute 51. So if we get past the Diana point, he doesn't file for another four years, right? That's correct, Judge. That's a big, big gap for you to fill in. Yes, Your Honor. And what I'm saying is when they consulted, I mean, it was actually the male who consulted the attorney and found him and filed, and it looks like that was a strategy on the attorney's part for the female to be the lead person on the asylum application. But the husband, the male, was included as a derivative on her asylum application. On the application itself, there's specifically a box that says, do you want to include your spouse, yes or no? And the box yes was checked. So this means that essentially this asylum application is for the both of us because there's specifically you can exclude your spouse if you wish and say, no, this is me only. And so that's why. And then later on, the reason why he filed in 2006 is because his attorney realized that once, if she were not within an exception, then he would not have derivative status, and so that he would have to have his own application on its own to have any form of relief available to him. What did she do, if anything, during the one-year period? For her? After, yeah, nothing. That's correct. She did not really have any exceptional circumstances. Zero. And it wasn't until it was months later that they got this group involved in the whole thing when her husband showed up. Is that right? That's correct. That's correct. Was she relying on what she thought was his application? Originally, when he went to find this association to help him file for asylum, he wanted to file asylum for himself, and I think the intent was to include his wife as a derivative on his application. The intent was, or he did? Well, again, there was no application filed at the time because this association didn't do what they were asked to do. Did he testify that he was going to do it for both of them? No, this question was never asked. It was never raised, and, again, this is why I believe Your Honor was correct that this is probably a good case for remand for further fact-finding because at the time, since this was not enumerated as one of the extraordinary circumstances, I think it was just a matter of asking. Now they know what to testify to. Right. Well, they didn't. The board didn't talk about the nature of the organization. It just said the delay was too much. I believe the board said you don't qualify for an exception. They just simply said you don't qualify for an exception. But they said because of the delay is all they talked about. They didn't mention the organization. They didn't say the organization in and of itself does block you. Right, and the board only said that regarding the female petitioner. No, they said it for the right of respondent also in the very next paragraph for the same reasons, talking about the delay. Right. But, I mean, I believe that, number one, had the association done what it was supposed to do, he would have filed within the one year. And the second thing is, again, what we're saying is that – But isn't that just woulda, coulda, shoulda? You know, I mean, they didn't do it, so then do you just get to wait for four years? Well, and then what happened was that nine months after this incident occurred, then the wife filed for asylum with him writing as a derivative on there, him included in the application. Essentially, as a couple, as a husband and wife, the two of them filed for asylum together. Thank you, Your Honors. Okay, thank you. The case is now in submission.
judges: KOZINSKI, TROTT, CALLAHAN